UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ERIE INSURANCE PROPERTY AND
CASUALTY COMPANY,

    Plaintiff,

v.                          Civil Action No. 2:17-cv-03126

THE ESTATE OF SANDRA KAY NICHOLS,
ALLISON ELAINE MCGINNIS,
ASHLEE NICOLE NICHOLS ROSAS, and
WILLIAM JACKSON STUCK,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are cross-motions for summary judgment, one filed by the plaintiff, Erie Insurance Property and Casualty Company ("Erie"), and one jointly by the three defendants other than William Jackson Stuck who has not entered an appearance. Both motions were filed September 17, 2018.

### I. Background

On October 6, 2016, William Jackson Stuck shot and killed his daughter, Sandra Kay Nichols, who for some time had been one of his primary caretakers, and who is the mother of defendants Allison McGinnis and Ashlee Rosas. Soon after the shooting, Mr. Stuck called 911 at 7:00 a.m., informing the 911 operator quite clearly, at the outset of a recorded call, of his

address, that he had shot his daughter, "Sandra Kay Nichols," and that she was a "traitor" who was involved in stealing his money. ECF No. 49, at 0:17 and 1:20. In the course of the rambling diatribe that followed, he described, disjointedly, bizarre plots that had been made against himself and others. Id. at 1:20 to 5:05. Beginning near the end of the call, Mr. Stuck succinctly stated that his daughter's body was lying on the kitchen floor, that he was going downstairs to shoot himself, and that the police should come in the back door which would be unlocked. Id. at 5:20. He then hung up. Prior to the police's arrival at his home, Mr. Stuck shot himself, resulting in a non-fatal wound.

As noted in Detective Hunter's affidavit of October 11, 2016, attached to the state criminal complaint against Mr. Stuck, which has been filed herein by Erie, Mr. Stuck reported to the officers who arrived on the scene that "he had waited on his daughter all night and he shot to kill her when she arrived." Criminal Compl., ECF No. 37-1, at 40-41.

Mr. Stuck had previously purchased a homeowner's insurance policy from Erie, which provides:

> We will pay all sums up to the amount shown on the
> Declarations which anyone we protect becomes legally
> obligated to pay as damages because of bodily injury
> or property damages caused by an occurrence during the

> policy period.  We will pay for only bodily injury or
> property damage covered by this policy.[1]

Insurance Policy, ECF No. 3, at 15.  This policy excludes coverage for intentional acts committed by the insured:

> We do not cover under *Bodily Injury Liability Coverage*, *Property Damage Liability Coverage*, *Personal Injury Liability Coverage* and *Medical Payments To Others Coverage*:
>
> 1. Bodily injury, property damage or personal injury expected or intended by anyone we protect even if:
>
>    a. the degree, kind or quality of the injury or damage is different than what was expected or intended; or
>    b. a different person, entity, real or personal property sustained the injury or damage than was expected or intended.

<u>Id.</u> at 16.

The Estate of Sandra Kay Nichols and her daughters, Ms. McGinnis and Ms. Rosas, ("defendants"),[2] initiated a civil action in state court against Mr. Stuck seeking damages for the murder of his daughter, based on his conduct which was alleged by the defendants (who are the plaintiffs in the civil action) to have been "reckless, intentional with malice aforethought." <u>See</u> State Court Compl., ECF No. 4, ¶¶ 4, 6.  These same parties also alleged in their state court complaint that Mr. Stuck

---

[1] The insurance policy defines "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions."  Insurance Policy, ECF No. 3, at 6.

[2] These parties will be referred to hereinafter as "defendants," and that reference will not include Mr. Stuck, who has not appeared in this case.

reported to local police that "he had waited on his daughter all night and he shot to kill her when she arrived."  Id. ¶ 5.

In November 2016, Dr. Timothy Saar conducted an independent medical examination to evaluate Mr. Stuck's mental competency to stand trial.  Dr. Saar's report, which has been filed by the defendants, acknowledges that Mr. Stuck informed the police that "he had waited for his daughter all night, and he shot to kill her when she arrived."  Saar Report, ECF No. 41-1, at 2.  Noted in the report is Dr. Saar's belief that Mr. Stuck likely has some form of dementia.  Id.  Dr. Saar found that Mr. Stuck was unable to complete any standardized tests due to his cognitive impairment and delusions, id. at 4, and that "Mr. Stuck, due to his level of confusion, was unable to fully complete the responses [to] style questions," id. at 5.  Dr. Saar also reported that Mr. Stuck's daughter, Sharon Lee, "stated that her father had a long history of erratic behaviors, and had been [in] mental health facilities twice back in the 1970's."  Id. at 4.  Dr. Saar ultimately concluded that Mr. Stuck was not competent to stand trial and that "it is questionable if he will ever regain competency."  Id. 5-6.  Dr. Saar declined to opine on the question of criminal responsibility.  Id. at 6.

Erie initiated the present action in this court on June 1, 2017, seeking declaratory relief under the Uniform Declaratory Judgments Act, W. Va. Code § 55-13-1, et seq., and judgment as to whether Erie is required to provide coverage under Mr. Stuck's policy and whether Erie must defend or indemnify Mr. Stuck for the defendants' state tort claims. The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

II. Legal Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out

to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

### III. Discussion

In cases grounded in diversity jurisdiction, "federal courts are to apply the substantive law the State in which they are sitting would apply if the case had originated in a State

court." Stonehocker v. Gen. Motors Corp., 587 F.2d 151, 154 (4th Cir. 1978).

The Supreme Court of Appeals of West Virginia has held that a policyholder may be denied coverage under an intentional act exclusion clause if the policyholder "(1) committed an intentional act <u>and</u> (2) expected or intended the specific resulting damage." Syllabus Pt. 7, <u>Farmers & Mechanics Mut. Ins. Co. of W. Va. v. Cook</u>, 210 W. Va. 394, 557 S.E.2d 801 (2001) (emphasis in original). "When an intentional acts exclusion uses language to the effect that insurance coverage is voided when the loss was 'expected or intended by the insured,' courts must generally use a subjective rather than objective standard for determining the policyholder's intent." <u>Id.</u> at Syllabus Pt. 8. The policyholder must intend "'a result that is wrongful in the eye of the law of torts,'" to trigger the intentional acts exclusion of an insurance policy. <u>Id.</u> at 402, 557 S.E.2d at 809.

Further, when a policyholder suffers from a mental illness

> [c]overage under an intentional injury exclusion clause in a homeowners' insurance policy may be denied when one who commits a criminal act has a <u>minimal awareness</u> of the nature of his act. The test for criminal insanity in West Virginia is appropriate only in a criminal trial and has no applicability to the

7

>     interpretation of plain language in an insurance
>     contract.

Syllabus, <u>Mun. Mut. Ins. Co. of W. Va. v. Mangus</u>, 191 W. Va. 113, 443 S.E.2d 455 (1994) (emphasis added). Consequently, in deciding whether to deny coverage under such a policy, the law in West Virginia does not consider the test for criminal insanity as required in a criminal case; that is, whether one is aware of the wrongfulness of his act or is able to conform his act to the requirements of the law is neither controlling nor in issue. Rather, the mentally ill insured need only have a "<u>minimal degree of understanding</u> of the nature of his act," in order for the intentional injury exclusion to apply. <u>Id.</u> at 117, 443 S.E.2d at 459 (emphasis added).

The defendants urge the court to consider, in seeking summary judgment, the dissent in <u>Mangus</u> which argues that intentional act exclusion clauses should not apply when the insured commits an insane act. Defs.' Mem. Supp. Mot. Summ. J., ECF No. 36, at 3-5 (citing cases from other states that use the standard proposed in the dissent). Though the defendants in their civil suit in state court allege that Mr. Stuck's conduct was "intentional with malice aforethought," the defendants in their briefing here claim that Mr. Stuck was mentally incompetent when he shot his daughter. <u>Id.</u> at 2. This argument, based as it is on the dissent, fails inasmuch as the

court is obliged to use the substantive law that West Virginia would apply, and the applicable test here is whether Mr. Stuck was minimally aware of the nature of his act.

The facts of <u>Mangus</u> are instructive. There, Mr. Mangus, the insured, shot his neighbor who then sued him for the resulting injuries. The insurer, Municipal Mutual, subsequently filed a declaratory judgment action asking the court to declare that it had no duty under the insurance policy's intentional acts exclusion clause. <u>Mangus</u>, 191 W. Va. at 114, 443 S.E.2d at 456. Mr. Mangus believed at the time of the shooting that: "(1) his neighbors were conspiring to drive him off his land because his wife, a former schoolteacher, knew the family secrets of the neighbors; (2) his phone was tapped; and (3) the traffic along his driveway in common with others was caused by the neighbors' involvement in drug dealing." <u>Id.</u> at 115, 443 S.E.2d at 457. Psychiatric testimony suggested that these beliefs resulted from Mr. Mangus's "clinical depression with psychotic features." <u>Id.</u>

In considering whether Mr. Mangus had a minimal awareness of his actions, the court imagined the following hypothetical scenario: "[I]f a person is so delusional that he shoots another human believing him to be a charging elephant, or shoves a knife in another's throat thinking that he is handing him an ice cream cone, then for insurance contract purposes the

act is not 'intentional.'" Id. at 116, 443 S.E.2d at 458. The psychiatric testimony given during the trial of the Mangus case revealed that, despite being "insane" at the time of the shooting, Mr. Mangus knew that he was going to shoot a man, that it was wrong and that he intended to shoot the man. Id. at 115-16, 443 S.E.2d at 457-58.[3] The court relied primarily on this testimony in determining that Mr. Mangus was minimally aware of the nature of his act. Id. However, the court also noted the details of the underlying incident in which Mr. Mangus and the victim were feuding and Mr. Mangus shouted at the victim, "You get out of here or I'm going to shoot you." Id. at 113-14, 443 S.E.2d at 455-56.

Here, Mr. Stuck revealed in the 911 call made soon after the shooting, that he shot his daughter, that he knew he shot his daughter, and that he believed her to be a "traitor." Even if the shooting was the product of delusional thinking (which Dr. Saar reported Mr. Stuck was suffering at the time of

---

[3] Although the state circuit court utilized a jury to answer three special interrogatories, the supreme court affirmed judgment in favor of the insurer by applying the facts to the law without requiring a jury determination of whether the intentional act exclusion applied. See generally Mangus, 191 W. Va. 113, 443 S.E.2d 455. In answering one of those questions, the jury found that Mr. Mangus shot the victim "as a result of a mental disease or defect" and lacked "substantial capacity either to appreciate the wrongfulness of his act or to conform his act to the requirements of the law." Id. at 114-15, 443 S.E.2d at 456-57.

his examination) or other mental infirmity, and despite the rambling nature of the 911 call except for the beginning and ending parts of it, his call clearly indicates he understood that, at the time of the act, he was shooting his daughter and intended to do so. Also supporting this conclusion is the fact that Mr. Stuck was able to give the 911 operator his address, telling the operator where the shooting occurred and where the body would be found. He asked the operator to notify the police and tell them to come in the back door which would be unlocked. He also told the operator he would be downstairs and that he was going to shoot himself, which he proceeded to do. Finally, it is conceded that Mr. Stuck, though wounded, reported to the police when they arrived that "he had waited on his daughter all night and he shot to kill her when she arrived." Criminal Compl., ECF No. 37-1, at 40-41; State Court Compl., ECF No. 4, ¶ 5; Saar Report, ECF No. 41-1, at 2.

It is noted that Erie makes the further argument that the defendants, in their response in this case to requests for admission, admitted that Mr. Stuck's conduct was expected or intended by him to result in bodily injury. That initial admission, which is neither needed by Erie nor persuasive here, does not influence the court's decision. Indeed, in the same series of requests for admission, the defendants further stated:

(1) Mr. Stuck "was insane and not capable of committing an intentional act"; and (2) Mr. Stuck "was insane and not capable of committing a deliberal [sic] act." Defs.' Answers to Pl.'s Req. Admis., ECF No. 37-1, at 6. Furthermore, the defendants denied that Mr. Stuck had a "minimal awareness of the nature of the acts at issue." Id. The foregoing answers to Erie's requests for admission leave the admissions confused at best, and the court does not rely on the initial admission in reaching a finding as to whether Mr. Stuck was minimally aware of the nature of his act.

Although, as noted, the defendants in their civil case complaint against Mr. Stuck claim that his conduct was "intentional with malice aforethought," they now argue that there remains an issue of material fact as to whether Mr. Stuck was minimally aware of the nature of his act. Defs.' Resp., ECF No. 41, at 1-2. The defendants first observe that Johnson v. Insurance Company of North America, a Virginia case with similar facts as, and relied upon by, Mangus, states that language in insurance policies that excludes coverage is construed against the insurer, which of course it is. 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986). Next, the defendants state that in Johnson, "[t]he insurer carried the burden to establish that Davis [the insured] was aware of what he was doing and that he intended injury to Johnson [the victim]. Therefore, the

12

exclusion applies." Defs.' Resp., ECF No. 41, at 2-3 (quoting Johnson, 232 Va. at 348, 350 S.E.2d at 621). Defendants contend that because psychiatric evaluations in each Mangus and Johnson acknowledge both the insureds' mental infirmities and that each of the insured individuals knew he was shooting a person, those cases are distinguishable from the one here. Id. The only relevant evidence as to Mr. Stuck's awareness, according to the defendants, is Dr. Saar's evaluation, which states that Mr. Stuck is mentally incompetent to stand trial. Id. at 3.

While the defendants are correct in that there is no testimony from mental health professionals that supports the notion that Mr. Stuck knew he was shooting his daughter, the absence of that testimony is not controlling. In Mangus, in addition to the psychiatrist's acknowledgment that Mr. Mangus knew he was shooting his neighbor, the facts of the underlying incident laid out by the court, in which Mr. Mangus threatened to, and ultimately did, shoot his neighbor over a property dispute, indicate that Mr. Mangus intended to shoot him. 191 W. Va. at 113-14, 443 S.E.2d at 455-56. In Johnson, two psychiatrists who evaluated the mentally ill insured stated that he intended to shoot the victim, noting that the insured also told the police, when he was arrested 15 hours after the shooting, that he shot the victim, just as Mr. Stuck did here

immediately after the shooting. 232 Va. at 341-43, 350 S.E.2d at 617-18. Further, none of the psychiatrists testifying in <u>Mangus</u> and <u>Johnson</u> were applying the "minimal awareness" test set forth by the West Virginia supreme court.[4]

The absence of psychiatric evaluations as to Mr. Stuck's sanity at the time of the act is not dispositive here. West Virginia established in <u>Mangus</u> that it follows the "standard denying coverage under a homeowners policy when a mentally ill insured has a minimal degree of understanding of the nature of his act." 191 W. Va. at 117, 443 S.E.2d at 459. West Virginia does not apply its criminal standard in this setting. <u>Id.</u>

Dr. Saar's report simply states that Mr. Stuck likely suffers from dementia, that his cognitive impairment and delusions rendered him unable to complete certain standardized tests, that he is not competent to stand trial and that he is unlikely to regain competence. Saar Report, ECF No. 41-1, at 2, 4, 5, 6. The conclusions of this report, even taken in the light most favorable to the defendants, do not shed light as to

---

[4] In both cases the courts were deciding what standard to use when evaluating whether an intentional act exclusion clause would apply to an insured person with a mental illness. <u>See</u> <u>Mangus</u>, 191 W. Va. at 115, 443 S.E.2d at 457; <u>Johnson</u>, 232 Va. at 345-47, 350 S.E.2d at 619-20.

what Mr. Stuck was or was not aware at the time of the shooting. Rather, the undisputed evidence in the record establishes that Mr. Stuck had at least minimal awareness of the nature of his act, namely: (1) the 911 call in which Mr. Stuck informed the 911 operator, soon after the shooting, that he had just shot his daughter, Sandra Kay Nichols, at his home, that she was a "traitor" who stole from him, that she was lying on the kitchen floor, that he was going downstairs to shoot himself which he did, and that the police could gain entry through an unlocked door; and (2) when the police arrived he informed them that "he had waited on his daughter all night and he shot to kill her when she arrived." Indeed, the act is shown to have been "intentional with malice aforethought," just as the defendants alleged in their civil lawsuit.

The court concludes that there is no genuine issue of material fact as to whether Mr. Stuck was minimally aware of his actions when he shot and killed Sandra Kay Nichols. Inasmuch as the only pertinent evidence before the court is that which supports the finding that he was mentally aware of the nature of his act when he shot his daughter, the plaintiff is entitled to summary judgment and declaratory relief.

Plaintiff's motion alternatively seeks default judgment against Mr. Stuck. The plaintiff has not satisfied the

court that service of the summons and complaint has been made on him.  It appears that the plaintiff has attempted service by serving a guardian ad litem for Mr. Stuck, who purported to waive service on his behalf in this matter and who may have been appointed in the state civil case referred to in the opinion and order herein, yet was not appointed for any purpose in this case by this court.

IV.  Conclusion

For the foregoing reasons, it is ORDERED that the plaintiff's motion for summary judgment be, and it hereby is, granted, except insofar as it seeks relief against defendant Stuck.  It is further ORDERED that the motion of the other three defendants for summary judgment be, and it hereby is, denied.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

Enter: December 6, 2018

_____
John T. Copenhaver, Jr.
Senior United States District Judge